UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:20 CV 1669 ACL |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiff Stephen White brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite White's severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform his past relevant work.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded.

## I.   Procedural History

White filed his application for benefits on September 14, 2018.   (Tr. 161-65.)   He claimed he became unable to work on September 14, 2018, due to acute mechanical back pain and a mini stroke.   (Tr. 210.)   White was 56 years of age at his alleged onset of disability date. His application was denied initially.   (Tr. 55, 62.)   White's claim was denied by an ALJ on April 21, 2020.   (Tr. 10-21.)   On September 25, 2020, the Appeals Council denied White's claim for review.   (Tr. 1-4.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.   *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, White argues that the ALJ erred "by failing to properly craft an RFC assessment in that the ALJ did not base the RFC on the substantial evidence in the record and did not properly weigh White's testimony."   (Doc. 18 at 6.)

## II.   The ALJ's Determination

The ALJ first found that White met the insured status requirements of the Social Security Act through December 31, 2023.   (Tr. 13.)   She stated that White has not engaged in substantial gainful activity since his alleged onset date.   *Id.*   In addition, the ALJ concluded that White had the following severe impairments: degenerative disc disease of the cervical spine and transient ischemic attack (TIA)/cerebrovascular accident.   *Id.*   The ALJ found that White did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.   (Tr. 14.)

As to White's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to perform medium

> work as defined in 20 CFR 404.1567(c) and 416.967(c) except no
> climbing of ladders, ropes, or scaffolds.   He can occasionally
> climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.
> He can have no more than occasional exposure to hazards such as
> unprotected heights.

(Tr. 15.)

The ALJ found that White was capable of performing his past relevant work as a

cashier/checker.   (Tr. 18.)   The ALJ therefore concluded that White was not under a disability,

as defined in the Social Security Act, from September 14, 2018, through the date of the decision.

(Tr. 20.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability
> insurance benefits protectively filed on September 14, 2018, the
> claimant is not disabled under sections 216(i) and 223(d) of the
> Social Security Act.

> Based on the application for supplemental security income
> protectively field on September 14, 2018, the claimant is not
> disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 20-21.)

## III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial

evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389,

401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less

than a preponderance of the evidence, but enough that a reasonable person would find it adequate

to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This

"substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The plaintiff's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.    Any corroboration by third parties of the plaintiff's impairments.

6.    The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.*

*Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as

a whole, we must affirm the administrative decision, even if the record could also have supported

an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal

quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974,

977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls

outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015)

(citation omitted).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or that has lasted or can be expected to last for a continuous period of not less than

twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant

has a disability when the claimant is "not only unable to do his previous work but cannot,

considering his age, education and work experience engage in any kind of substantial gainful

work which exists … in significant numbers in the region where such individual lives or in

several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social

Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First,

the Commissioner will consider a claimant's work activity.   If the claimant is engaged in

substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements"

of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."   *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though

the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a.   The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists.   *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).   If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent."   20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2).   The Commissioner must then rate the degree of functional loss resulting from the impairments.   *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3).   Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities.   *See id.*   Next, the Commissioner must determine the severity of the impairment based on those ratings.   *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c).   If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder.   *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).   This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders.   *See id.*   If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment.   *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV.   Discussion

White argues that the ALJ erred in determining his RFC.   Specifically, he contends that the ALJ failed to point to medical evidence to support the conclusion that White could perform medium work and failed to properly consider White's testimony.

A claimant's RFC is the most he can do despite his physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).   It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record.   20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.   Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician.   *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).   "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion."   *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).   Additionally, when determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

The ALJ determined that White had the RFC to perform medium work, with the following additional limitations: no climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and no more than occasional exposure to hazards such as unprotected heights.   (Tr. 15.)

White testified that he suffered a stroke in 2018, which affected his mobility and his ability to carry things.  (Tr. 15, 37-38.)   He indicated that he could only lift up to fifteen to twenty pounds periodically.   (Tr. 15, 45.)   White testified that he now walks slower, walked less, and had pain after walking more than ten to fifteen minutes.   (Tr. 15, 45-46.)   He indicated that he has not followed his doctors' recommendations that he undergo physical therapy and take prescribed medication because he does not have insurance.   (Tr. 15, 39, 44.)   He stated that his left lower extremity "seemed heavy" and that he had stumbled or fallen several times.   (Tr. 16, 46.)   White testified that a doctor recommended a cane or other assistive device and that he used a cane at home two to three times a week.   (Tr. 16, 47.)   White stated that he experienced pain in the left upper extremity when carrying things and he was able to carry a gallon of milk with the left upper extremity only for a short distance.   (Tr. 16, 48.)   He was able to walk about a mile round trip, but had to stop to rest for ten to fifteen minutes each way.   (Tr. 16, 43.)   White testified that he was able to perform basic hygiene, cook, and do laundry, but his son and daughter assisted him multiple times a week with all other household chores.   (Tr. 41-42.)

The ALJ found White's statements about his limitations were inconsistent "with the limited, conservative treatment and the results from objective diagnostic testing and observations made by treating sources."   (Tr. 16.)   She also indicated that she had considered White's varied work history.   (Tr. 18.)   The ALJ concluded that the medical evidence "establishes no inability to ambulate effectively or to perform fine and gross movements effectively on a sustained basis." *Id.*

The relevant medical evidence in this case is summarized below:

White presented to the emergency room at Christian Hospital Northeast on August 30, 2018, with complaints of lower extremity weakness.   (Tr. 403.)   He reported that he was in his

usual state of health until two days prior, when he noticed his right leg was "dragging." *Id.*   He also reported a recent fall during which he hit his head but did not lose consciousness. *Id.* White was noted to have a past history of strokes. *Id.*   Upon examination, White had an unsteady gait, leaning to the left side while walking; and left lower extremity weakness. (Tr. 405.)   A CT scan of the head was normal. (Tr. 407.)   White was diagnosed with acute left lower extremity weakness probably due to stroke. *Id.*   He underwent an MRI of the brain on August 31, 2018, which revealed a large left frontoparietal subdural hematoma with mass effect and a 5 mm left to right midline shift; acute lacunar infarcts; and chronic lacunar infarcts. (Tr. 407.)   He also underwent an MRI of the cervical spine, which revealed C3-C7 spondylosis, with vertebral canal stenosis at C5-6 and C6-7; and foraminal stenosis bilaterally at multiple levels. (Tr. 466.)   White was referred to Barnes Jewish Hospital for an urgent neurosurgical evaluation. (Tr. 408.)

White was admitted at Barnes Jewish Hospital on August 31, 2018, for neurosurgical evaluation of his subdural hematoma. (Tr. 253.)   He was neurologically intact on strength examination. (Tr. 252.)   It was found that White's symptoms were from an acute stroke affecting the right hemisphere rather than the subdural fluid collection affecting the left hemisphere. *Id.*   A neurology consultation for his stroke was recommended. *Id.*   Upon neurologic examination, White had 4/5 strength of the left deltoid and biceps, but otherwise he had full strength throughout; and a mild left pronator drift. (Tr. 258.)   The examining neurologist prescribed medication; recommended that White undergo carotid duplex studies as an outpatient; and recommended that he follow-up in the Stroke Neurology Clinic. (Tr. 267.) He was also assessed by a physical therapist, who recommended that White be discharged to home. (Tr. 253.)   White was discharged on September 1, 2018. *Id.*   At that time, he was able

to move all extremities well with full strength; his sensation was intact to light touch; and he was able to ambulate without assistance.   (Tr. 255.)

White presented to Barnes Jewish Hospital on September 24, 2018, for follow-up, at which time he reported continued improvement of his left-sided weakness since his hospitalization.   (Tr. 511.)   He underwent a follow-up CT scan of the brain, which revealed a new component of hyperdensity within the chronic subdural hematoma; and the overall size was roughly stable with an increase in midline shift.   *Id.*   Neurosurgeon Joshua Dowling, M.D., diagnosed White with a left convexity chronic subdural hematoma, with little change since his hospitalization.   *Id.*   He indicated that the scan would be repeated again in a month.   *Id.*   White returned on October 25, 2018, at which time he reported continued left lower extremity weakness secondary to his stroke.   (Tr. 513.)   A follow-up CT scan of the brain revealed improving left convexity chronic subdural hematoma with decreased size and mass effect.   *Id.*   Dr. Dowling recommended a follow-up study in two months.   *Id.*

On January 16, 2019, state agency medical consultant Judee Bland, M.D. reviewed the evidence of record and expressed the opinion that there was insufficient evidence to evaluate the claim.   (Tr. 58-59.)   Dr. Bland noted that follow-ups have shown that White's left leg weakness is improving, but he continued to experience left lower extremity weakness on October 25, 2018.   (Tr. 58.)   She further noted that imaging from the hospital reveal significant degenerative disc disease of the cervical spine and there are no examinations in the file that provide information regarding this condition.   (Tr. 58-59.)   Dr. Bland stated that additional evidence would be needed to fully evaluate White's conditions and limitations.   (Tr. 59.)

After the administrative hearing, the ALJ ordered a consultative examination.   (Tr. 17.)   As a result, White saw Melvin J. Butler, M.D., on March 16, 2020, for an internal medicine

examination.   (Tr. 642.)   White complained of lower back pain and left leg weakness.   *Id.*
White indicated that he had last worked in January of 2018 as a factory worker.   *Id.*   Dr. Butler
noted White had a past medical history of osteoarthritis of the lower back, status post right
lacunar infarct and an incidental subdural hematoma in 2018, history of right basal ganglia stroke
in 2013, resolving left hemapheresis, cervical spondylosis, hypertension, and tobacco abuse.   *Id.*
White reported lower back pain after walking one block or standing for greater than thirty
minutes.   (Tr. 643.)   The pain was sometimes relieved with over-the-counter pain medicine
and/or rest.   *Id.*   He reported intermittent left leg weakness after walking one block or standing
for greater than thirty minutes.   *Id.*   This pain was sometimes resolved with rest.   *Id.*   Upon
examination, Dr. Butler noted White had no difficulty ambulating around the office, but had
slight difficulty getting out of a chair and getting on and off the examination table.   *Id.*   He was
able to dress and undress without assistance.   *Id.*   White had full range of motion of the cervical
spine, no swelling or tenderness of the lower extremities, and no sensory defects.   *Id.*   Dr.
Butler noted reduced range of motion of the lumbar spine; and some weakness in the lower left
extremity.   (Tr. 646.)   White's gait was wide based and was assisted with a cane.   *Id.*   Dr.
Butler diagnosed White with lower back pain secondary to osteoarthritis, history of a right
lacunar infarct with an incidental subdural hematoma in September 2018, history of a right basal
ganglia stroke in 2013, resolving left hemapheresis, cervical spondylosis, hypertension, and
tobacco abuse.   *Id.*

White argues that the record contains no medical evidence that addresses his ability to
function in the workplace or that supports the ALJ's conclusion that White was capable of lifting
up to fifty pounds or standing for at least six hours each day.   He argues that the ALJ should

have further developed the record regarding White's ability to function so that the ALJ could assess an RFC that was supported by some medical evidence.   The undersigned agrees.

A "social security hearing is a non-adversarial hearing, and the ALJ has a duty to fully develop the record." *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).   The ALJ bears this responsibility "independent of the claimant's burden to press [his] case" and it extends to cases where claimants are represented by counsel at the administrative hearing.   *Stormo*, 377 F.3d at 806.   "The ALJ's obligation to develop the record 'is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'"   *Coleman v. Colvin*, No. 13cv1004 EJM, 2013 WL 4069523, at *2 (N.D. Iowa Aug. 12, 2013) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)).   "An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).

In determining White's RFC, the ALJ indicated she had considered the January 2019 prior administrative medical finding of Dr. Bland that there was insufficient evidence to evaluate White's claim.   (Tr. 18, 58-59.)   The ALJ found that this opinion was "unpersuasive."   (Tr. 18.)   She explained that, "[w]hile Dr. Bland has program knowledge, evidence received at the hearing level is sufficient to establish functional limitations." *Id.*   Dr. Bland's opinion was the only medical opinion in the record.

The regulations provide that, if there is insufficient evidence, the ALJ "will try to resolve the inconsistency" by taking one or more of the following actions:

(i) We may recontact your medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical

evidence over the telephone, we will send the telephone report to the source for review, signature, and return;

(ii) We may request additional existing evidence;

(iii) We may ask you to undergo a consultative examination at our expense (see §§ 404.1517 through 404.1519t); or

(iv) We may ask you or others for more information.

20 C.F.R. 404.1520b(b).

In this case, the ALJ ordered a consultative examination with Dr. Butler.   As White points out, however, Dr. Butler offered no opinion regarding White's functional restrictions.

The ALJ found that White demonstrated significant improvement following his September 2018 hospitalization.   (Tr. 17.)   She noted that the record reveals a seventeen-month gap in treatment before the consultative examination.   *Id.*   The ALJ stated that White's history of stroke coupled with imaging showing some impairment of the cervical spine warrant some restrictions, but the "lack of treatment, evidence of improvement at limited follow-ups, coupled with the generally normal examination by the consultative examiner supports a finding of no more significant restrictions."   *Id.*   The ALJ acknowledged that White presented with a cane to his consultative examination, but stated that the record does not support the medical necessity of the cane.   (Tr. 17-18.)   She further noted that White "demonstrated full strength, full range of motion in all joints, and only slightly reduced range of motion of the lumbar spine."   (Tr. 18.)

The ALJ accurately noted that White's failure to seek treatment for a prolonged period, evidence of improvement in his condition, and his inconsistent work record are factors inconsistent with his allegations of total disability.   The ALJ's finding that White is capable of performing a range of medium work is nonetheless unsupported by the record as a whole. Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."   20 C.F.R. § 404.1567(c).   A full range of medium work requires standing or walking, off and on, for a total of approximately six hours in

an eight-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.   Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

There is simply no evidence supporting the ALJ's conclusion that White can stand or walk for six hours in an eight-hour workday and lift up to fifty pounds on a regular basis. Contrary to the ALJ's statement, Dr. Butler did not find full strength:   he noted some weakness in the lower left extremity.   (Tr. 646.)   This finding is consistent with White's complaints following his stroke of left leg weakness that is worsened after walking or standing for long periods.   Dr. Butler further found that White's gait was wide-based and was assisted with a cane.   *Id.*

As the Eighth Circuit recently noted, the "disability determination process is not an adversarial process."   *Noerper v. Saul*, 964 F.3d 738, 747 (8th Cir. 2020).   The ALJ's duty to develop the record fairly and fully extends even to cases where, as here, an attorney represented the claimant at the administrative hearing.   *Id.*   In *Noerper*, the ALJ had concluded that the plaintiff retained the ability to stand or walk for six hours in an eight-hour workday, despite complaints of knee pain due to cartilage loss.   On appeal, the Court held that there was no reliable evidence to support that conclusion and remanded for further development regarding the plaintiff's functional limitations on walking and standing.   *Id.* at 740, 746.   "In reaching this result, we do not suggest that an ALJ must in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality.   Something, however, is needed."   *Id.*   Here, like in *Noerper*, the ALJ failed to full and fairly develop the record regarding White's functional limitations.

**Conclusion**

For the foregoing reasons, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded.   On remand, the ALJ is directed to obtain a medical opinion that addresses White's ability to function in the workplace and reassess White's RFC.


/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of March, 2022.